IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SRC LIQUIDATION, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 15-10541 (BLS)<br><br>(Jointly Administered) |
| CARESOURCE<br><br>and<br><br>CARESOURCE MANAGEMENT GROUP CO.,<br><br>Plaintiffs,<br><br>v.<br><br>SRC LIQUIDATION COMPANY, SR LIQUIDATION HOLDING COMPANY, SR LIQUIDATION TECNOLOGIES, INC., iMLIQUIDATION, LLC, SR LIQUIDATION OF PUERTO RICO INC., SR LIQUIDATION OF MEXICO HOLDING, S. DE R.L. DE C.V., STANDARD REGISTER DE MEXICO, S. DE R.L. DE C.V., STANDARD REGISTER SERVICIOS, S. DE R.L. DE C.V., SR LIQUIDATION TECHNOLOGIES CANADA ULC,<br><br>and<br><br>SILVER POINT FINANCE, LLC, as Agent and Collateral Agent, SPCP GROUP, LLC, SPCP GROUP III, LLC, DLJ INVESMENT PARTNERS, L.P., DLJ INVESTMENT PARTNERS II, L.P., DLJ IP II HOLDINGS, L.P., SPCP GROUP III LLC, SPF CDO I, LTD., SP WORKFLOW HOLDINGS, INC., SILVER POINT CAPITAL FUND, L.P.,<br><br>Defendants. | Adv. Proc. No. 15-51775 (BLS)<br><br>**Re: Docket Nos. 1, 52, 53, 55, 59, 60, 62, 63, 64, 71, 84** |

Kevin Scott Mann, Esq.
Christopher Page Simon, Esq.
CROSS & SIMON, LLC
1105 N. Market Street, Suite 901
P.O. Box 1380
Wilmington, DE 19899-1380

David M. Whittaker, Esq.
BRICKER & ECKLER LLP
100 South Third Street
Columbus, OH 43215
*LEAD ATTORNEY*

*Attorneys for Plaintiffs*

Justin K. Edelson, Esq.
POLSINELLI PC
222 Delaware Avenue
Suite 1101
Wilmington, DE 19801

*Attorneys for SRC Liquidation Defendants*

Jason M. Liberi, Esq.
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899-0636

*Attorneys for Silver Point Defendants*

## OPINION

Before the Court is the Defendants' Motion to Dismiss,[1] arguing that this Court lacks subject matter jurisdiction on the ground that the Complaint for declaratory relief filed by CareSource is unripe. CareSource contends that its claims for declaratory relief are ripe for decision. For the reasons that follow, the Court will deny the Motion.

## I. BACKGROUND

The Standard Register Company (n/k/a SRC Liquidation, LLC) (referred to hereinafter as the "Debtors"[2] or "SRC") was a company in the printing and document production business. Founded in 1912, the company enjoyed success for over a century in its printing services and printed goods, both of which made up a significant part of their business. Among other things, SRC provided document management and printing services, such as clinical documents,

---

[1] Capitalized terms have the meanings assigned to them *infra*.

[2] "Debtors" also refers to SRC's affiliates that were included in the bankruptcy filing.

operational forms, secure prescriptions, and supplies to various entities in the healthcare industry.

As did other companies in the paper industry before it, SRC encountered liquidity issues and struggled mightily in the age of digital technology. Ultimately, SRC and its affiliates filed voluntary petitions for chapter 11 relief on March 12, 2015 (Case No. 15-10541) [Docket No. 1]. The Debtors filed the case to affect a sale of the company as a going concern under the Chapter 11 proceedings. Subsequently, the Court approved a sale of the Debtors' assets to Taylor Corporation [Docket No. 698], and on November 19, 2015, the Court confirmed the Debtors' Chapter 11 Plan of Liquidation (the "Plan") [Docket No. 1331].

As alleged in the Complaint ("Complaint"), CareSource and CareSource Management Group Co. (collectively, "CareSource") are each incorporated under the laws of the State of Ohio. CareSource is a managed care company that provides services for its approximately 1.4 million health care members. The company "frequently uses printed materials to communicate with its members regarding their health care policies, benefits, coverage, and cost of health insurance coverage." Compl. ¶ 8.

Prior to the Debtors' Chapter 11 proceedings, CareSource entered into a series of agreements (the "Contracts") with SRC for printing services. Given the "sensitive nature of the printing work to be done by the Debtors," the parties agreed to a provision in the Contracts that required SRC to purchase insurance to protect CareSource from liability arising from possible printing errors. *Id.* at ¶ 12. CareSource alleges that SRC failed to perform under the terms of the Contract, arguing that SRC "made errors in certain printed materials, exposing CareSource to possible liability." *Id.* at ¶ 13. It is undisputed that, to date, CareSource has not been presented

3

with any claims from third parties based on the work done by SRC, and CareSource has not filed any claims against the insurance policies.

Following the sale of assets to Taylor Corporation, the Debtors filed notice of their rejection of the Contracts [Docket No. 1097]. CareSource alleges that "[a]t all times prior to the filing of the Plan, the Debtors consistently maintained that proceeds from their liability insurance policies were intended to cover the claims of CareSource." Ltd. Objection of CareSource and CareSource Mgmt. Grp Co. to First Amended Chapter 11 Plan of Liquidation for SRC Liquidation Co. and its Affiliates ¶ 1, Docket No. 1243. But, after filing the rejection notice, the Debtors "informed CareSource ... that the Insurance Policies and all proceeds from the Insurance Policies belonged to their secured creditors, are subject to liens of their secured lenders, and that the Insurance Policies would be transferred under the Plan to a trust benefitting the Debtors' secured creditors." Compl. ¶ 22. That about-face stance, they contend, is reflected in Sections 2.3.4 and 2.3.7 of the Plan.[3] CareSource subsequently filed an objection to the Plan, arguing, *inter alia*, that the Debtors had no rights to the proceeds of the insurance policies, the proceeds

---

[3] The relevant language of the Plan states as follows:

2.3.4 <u>Vesting of Assets and Dissolution of the Debtors</u>. On the Effective Date, all Assets of the Debtors not otherwise transferred either to the GUC Trust or the Secured Creditor Trust shall vest in Liquidating SRC free and clear of all Claims, Equity Interests, liens, charges or other encumbrances other than the obligations set forth in the Wind-Down Settlement, if any.

2.3.7 <u>Secured Creditor Trust Assets</u>. Notwithstanding any prohibition of assignability under applicable non-bankruptcy law, on the Effective Date, the Debtors shall transfer all of their right, title, and interest in and to all of the Secured Creditor Trust Assets not already transferred to the Secured Creditor Trust pursuant to the Wind-Down Settlement, if any. In accordance with section 1141 of the Bankruptcy Code, all Secured Creditor Trust Assets shall automatically vest in the Secured Creditor Trust free and clear of all Claims and Liens, other than Permitted Claims and Liens under the Second Lien Term Loan Facility and the Claims and Liens of the Second Lien Agent, Holders of Class III Claims and Bank of America, N.A..

First Amended Chapter 11 Plan of Liquidation for SRC Liquidation Co. and its Affiliates §§ 2.3.4 and 2.3.7, Docket No. 1086. The Plan defines "Secured Creditor Trust Assets" as "all of the Debtors' Assets" except for a limited number of items. *Id.* at B.102. The proceeds from the insurance policies are not included in the list of exceptions.

are not property of the estate, and that interest in the policies could not be transferred under the Plan [Docket No. 1243]. Their objection was consensually withdrawn in the Confirmation Order [Docket No. 1331 ¶ 41], but their rights to litigate the claims were preserved.

CareSource filed the Complaint initiating this adversary proceeding the same day it filed its objection to the Plan [Adv. Docket No. 1]. CareSource seeks declaratory relief as it relates to its rights under the insurance policies and how those policies relate to the Final DIP Financing Order and the Plan.[4] In response to CareSource's Complaint for declaratory judgment, the Silver Point Defendants filed a 12(b)(1) Motion to Dismiss (the "Motion to Dismiss" or "Motion") that the DLJ Defendants and Debtors have joined. Those motions center on arguments pertaining to ripeness of the issues to be heard, and contend that this Court lacks jurisdiction to hear the matter because there is presently no case or controversy between the parties. The Debtors also argue that the Complaint should be dismissed as to them because they have no economic stake in the outcome. The Court will now turn to those arguments.

## II. THE PARTIES' POSITIONS

The Silver Point Defendants filed their Motion,[5] arguing that the adversary proceeding should be dismissed "as it does not present an actual and justiciable case or controversy." Silver Point Defs.' Mot. to Dismiss 2. Specifically, they contend that, because CareSource alleges only

---

[4] The Defendants in these proceedings are as follows: (1) the Debtor and its affiliates; (2) Silver Point Finance, LLC, SPCP Group, LLC, SPCP Group III, LLC, SPCP Group III LLC, SPF CDO I, Ltd., SP Workflow Holdings Inc., and Silver Point Capital Fund, L.P. (the "Silver Point Defendants" or "Defendants") as administrative agent and collateral agent for certain credit facilities with the Debtors; and (3) DLJ Investment Partners, L.P., DLJ Investment Partners II, L.P., and DLJ IP II Holdings, L.P. (the "DLJ Defendants" or "Defendants"). CareSource avers that Silver Point Finance LLC is "the administrative agent for the lenders DLJ Investment Partners, L.P., DLJ Investment Partners II, L.P., DLJ IP II Holdings, L.P., SPCP Group III LLC, SPCP Group, LLC, SPF CDO I, LTD., SP Workflow Holdings, Inc., Silver Point Capital Fund, L.P. ... ." Compl. ¶ 3. Further, the original Complaint lists Wells Fargo, N.A. and Bank of America, N.A. as defendant-lenders, but they were dismissed with prejudice pursuant to a settlement and stipulation filed on January 10, 2016 [Adv. Docket No. 84].

[5] The DLJ Defendants joined in the Motion and its argument without any additions.

that it could face liability, and has not as of yet, the Complaint is unripe because it essentially requests "an opinion advising what the law would be upon a hypothetical state of facts." *Presbytery of N.J. of the Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1463 (3d Cir. 1994) (quoting *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 649 (3d Cir. 1990)). Essentially, Silverpoint argues that the Court is being asked to determine parties' rights with respect to proceeds from insurance policies that may or may not come into existence because no claims have yet been filed. And because they see no justiciable case or controversy before the Court, the Silver Point Defendants deny that that the adversary proceeding constitutes a core proceeding under 28 U.S.C. § 157(b).

The Debtors joined in that Motion argument and additionally argue that the Complaint should be dismissed as it relates to them because any interest they may have possessed in the proceeds of the insurance policies were transferred to the aforementioned trust. Thus, the Complaint should be dismissed as to them because they have no economic stake in the action.

CareSource responds by emphasizing that it seeks a declaration of rights, in which cases a court may issue a judgment "before accomplished injury can be established." *Step-Saver*, 912 F.2d at 647 (internal quotation omitted). In that sense, the question becomes "whether the facts alleged ... show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 647 (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). CareSource contends that there is such a controversy here because it is asking the Court to determine whether the insurance policies and proceeds therefrom are transferrable assets of the Debtors' estate. Further, it argues that its rights have been affected by the sale to Taylor, the rejection notice, and the Plan. Finally, CareSource argues that the Debtors should not be dismissed out of the

litigation because the claims at issue directly challenge the Debtors' ability to transfer the policy interests under the Plan. On those grounds, CareSource maintains that the issues are ripe and the Motion should be denied.

## III. JURISDICTION AND VENUE

The Court's jurisdiction over the adversary proceeding is contested on ripeness grounds. The Court has "inherent power and a continuing obligation to determine [its] own jurisdiction." *Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1198 (3d Cir. 1991). The Court therefore has jurisdiction to consider the Motion. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (K), and (O).

## IV. DISCUSSION

### a. The 12(b)(1) Standard

The Defendants seek dismissal of the Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, made applicable by Federal Rule of Bankruptcy Procedure 7012. "Rule 12(b)(1) ... provides that a federal court may dismiss a complaint for lack of subject matter jurisdiction." *Mata v. Eclipse Aerospace, Inc. (In re AE Liquidation, Inc.)*, 435 B.R. 894, 900 (Bankr. D. Del. 2010). At issue in a 12(b)(1) "is the trial court's ... very power to hear the case[.]" *Mortensen v. First Fed. Sav. And Loan Ass'n*, 549 F.2d 844, 891 (3d Cir. 1977).

A challenge under a 12(b)(1) motion takes the form of either a facial attack or a factual attack. *Id.* Facial attacks, like the case here, "contest the sufficiency of the pleadings, and the trial court must accept the complaint's allegations as true." *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009) (quotation omitted). In that sense, "the court assumes the veracity of the allegations in the complaint but must examine the pleadings to ascertain whether they present an action within the court's jurisdiction." *Democracy Rising PA*

*v. Celluci*, 603 F. Supp. 2d 780, 788 (M.D. Pa. 2009) (citing *United States ex rel. Atkinson v. PA.*

*Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007)). "In the face of a 12(b)(1) motion, the

plaintiff has the burden to 'convince the court it has jurisdiction.'" *Democracy Rising PA*, 603 F.

Supp. 2d at 788 (quoting *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000)).

   *b. Ripeness*

   The gravamen of this Motion is ripeness: no claims have arisen, so why are we fighting

about insurance proceeds and coverage at this point? Despite the fact that no claims have been

filed, the Court finds that CareSource has satisfied its burden in showing that the Court has

jurisdiction and that its claims are ripe for review.

   As the Third Circuit has noted, "it is difficult to define the contours of the ripeness

doctrine with precision. The task is even more problematic when defining ripeness in the context

of declaratory judgment actions ... ." *Step-Saver*, 912 F.2d at 646. The trouble arises for two

reasons: (1) there is considerable discretion built into the Declaratory Judgment Act;[6] and (2)

such judgments "are issued before accomplished injury can be established ... ." *Id.* at 646-47

(internal quotations omitted). Those issues tend to muddy the already murky waters of the

ripeness analysis. What is clear, however, is that "declaratory judgments can be issued only

when there is 'an actual controversy ... [t]he discretionary power to determine the rights of

parties before injury has actually happened cannot be exercised unless there is a legitimate

dispute between the parties." *Id.* at 647 (quoting 28 U.S.C. § 2201). The basic purpose of

ripeness "is to prevent the courts, through avoidance of premature adjudication, from entangling

themselves in abstract disagreements ... ." *Abbott Labs. v Gardner*, 387 U.S. 136, 148 (1967).

---

[6] The Declaratory Judgment Act provides: "in a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

While there is no precise test for a ripeness determination, the Supreme Court has said that "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, or sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co.*, 312 U.S. at 273. The Third Circuit has "glean[ed] ... certain basic principles" from the Supreme Court that guide this Court's analysis. *Step-Saver*, F.2d at 647. Those basic principles relate to: (1) the adversity of the interest of the parties; (2) the conclusiveness of the judicial judgment; and (3) the practical help, or utility, of that judgment. *Id.*

1. Adversity of Interest

The Court first addresses the adversity of the interests of the parties. In the declaratory judgment context, the plaintiff is not required to show "a *completed* harm to establish adversity of interest between the parties[.]" *Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Eng'rs, Local Union No. 66*, 580 F.3d 185, 190 (3d Cir. 2009) (emphasis in original) (quoting *Armstrong World Indus., Inc. v. Adams*, 961 F.2d 405, 412 (3d Cir. 1992)). But "to protect against a feared future event, the plaintiff must demonstrate that the probability of that future event occurring is real and substantial ... ." *Id.* "[A] potential harm that is 'contingent' on a future event occurring will likely not satisfy this prong" in the analysis. *Pittsburgh Mack & Sales*, 580 F.3d at 190 (citations omitted).

The Defendants argue that CareSource's claims fail the ripeness analysis because they seek to determine the parties' rights to insurance proceeds that do not yet exist. Defendants stress that the claims presently do not exist, and they may never develop unless certain future events occur, those events being (i) successful claims asserted against CareSource by affected customers and (ii) a successful claim by CareSource against the insurance policies.

CareSource responds, arguing that there is an immediate issue that is ripe for determination. Even though no claim for proceeds has yet been filed, CareSource contends that its rights under the policies have been directly impacted by the sale to Taylor, the rejection notice, and the Plan. CareSource further argues that it is entitled to "the peace of mind in knowing that the proceeds of Insurance Policies that were specifically purchased because of the Debtors' contracts with CareSource are not estate assets and were not transferred pursuant to the Plan." Resp. of CareSource in Opp'n to Defs.' Mot. to Dismiss 9. Essentially, CareSource contends that its rights have been impaired and it is that current, actual impairment that makes the action ripe.

Requests for declaratory relief as to insurance coverage are hardly unusual, and case law teaches that they are neither unripe nor advisory opinions. *See, e.g.*, *ACandS, Inc. v. Aetna Cas. and Sur. Co.*, 666 F.2d 819, 822-23 (3d Cir. 1981) (finding claims for declaratory relief with respect to obligations under insurance policies were "real and concrete[,]" even though the plaintiff had not yet become liable to pay any judgment, because "[t]he factors that will determine the relative duties and benefits under the insurance contracts are independent of the underlying claims and are being presented in an adversarial context by the parties with adverse interests."); *In re Longview Power, LLC*, 516 B.R. 282, 292 (Bankr. D. Del. 2014) ("This is an action for declaratory relief, and courts routinely grant declaratory relief regarding the scope of insurance coverage before the underlying claims have matured or finally adjudicated. A declaratory judgment would conclusively establish the parties' rights and obligations. In the bankruptcy context, declaratory relief is warranted when necessary to achieve a successful reorganization.").

The Court finds that CareSource has sufficiently demonstrated that there are sufficiently adverse interests between the parties. Consideration of the procedural posture here reinforces this conclusion: this is a post-confirmation case, and there is a real possibility of claims arising years into the future. CareSource's concerns are real: they may have to reopen this case years from now, and they will have to track down relevant parties and necessary documents to pursue and obtain the insurance coverage they believe they are entitled to. Thus, the Court determines that this factor weighs substantially in favor of a finding of ripeness at the present time.

2. Conclusiveness of Judgment

The Court next addresses the conclusiveness of the judicial judgment factor. "In analyzing this factor, we must 'determine whether judicial action at the present time would amount to more than an advisory opinion based upon a hypothetical set of facts.'" *Pittsburgh Mack & Sales*, 580 F.3d at 190-91 (quoting *Presbyterian Church*, 40 F.3d at 1468). This factor centers on whether or not a judicial ruling will affect the legal status of the parties. In *Step-Saver*, a seller of packaged computer systems sought a declaration that its suppliers of computer hardware and software were liable for product defects "if certain collateral actions filed by ... customers establish[ed] defects in the products sold by the [suppliers] to [the seller]." *Step-Saver*, 912 F.2d at 644. The Third Circuit ruled that the request for declaratory relief failed the conclusiveness test because it was "based on a contingency." *Id.* at 648. "Thus, even if [the panel] issued the requested declaration, the legal status of the parties would not change (nor would it be clarified), because [the] declaration itself would be a contingency." *Id.* In essence,

> such a declaration would probably be an exercise in futility because [the seller] and the defendants would be left to do battle on the issue of whether the "liability," for which we declared the defendants responsible, was really the liability that will be established in the consumer suits ... it would be possible, particularly given [the seller's] significant role in combining the relevant equipment packages, for [the seller], but not the defendants, to be liable to the

11

customers.

*Id.*

The Court finds that this factor also weighs in favor of a finding of ripeness. Unlike in

*Step-Saver*, a judgment in this adversary proceeding would conclusively determine CareSource's

interests under the insurance policies. As CareSource argues, their rights may have been

impacted by the sale, the rejection notice, and the confirmed Plan. A judgment determining the

scope of interests would clarify the breadth of the impact discussed by CareSource. As such, the

Court finds that this factor favors ripeness.

### 3. Utility of Judgment

The Court now turns to the final factor, that being the practical help, or utility, of an

issued judgment. As the Third Circuit has noted, "[o]ne of the primary purposes behind the

Declaratory Judgment Act was to enable plaintiffs to preserve the status quo before irreparable

damage was done ... and a case should not be considered justiciable unless the court is convinced

that by its action a useful purpose will be served." *Id.* at 649 (internal quotations and alterations

omitted). In *Step-Saver*, the Third Circuit ruled that this factor weighed against a finding of

ripeness because "[the plaintiff] w[ould] take the same steps" regardless of a judicial

determination. *Id.* at 650.

The Court finds that a judicial judgment in this adversary proceeding would be practical

and useful. Unlike in *Step-Saver*, a determination of CareSource's interests as related to the

insurance policies would certainly contribute to, if not determine, CareSource's decisions

regarding the real risk of future liability. As such, the Court finds that this final factor weighs in

favor of a finding of ripeness as well.

4. Conclusion

The Court finds that all three factors, as delineated by the Third Circuit, weigh in favor of a finding of ripeness as they relate to the Silver Point Defendants' arguments. As such, the Court finds that CareSource has met its burden to show jurisdiction under the 12(b)(1) standard, and the Court will deny the Defendants' Motion to Dismiss.

*c. SRC's Additional Argument*

In addition to the arguments presented by the Silver Point Defendants, the Debtors argue that the Complaint should be dismissed as against them because "they have no economic stake in the litigation." SRC Defs.' Joinder in and Adaptation of Silver Point Defs.' Mot. to Dismiss the Compl. 3 (citing *Step-Saver*, 912 F.2d at 648). Specifically, the Debtors contend that their interests in the proceeds of the insurance policies were transferred under the Plan to a trust created for the benefit of the Debtors' secured creditors.[7]

The Court rejects the Debtors' additional argument. CareSource explicitly contends in the Complaint that the proceeds from the policies are not property of the Debtors' estate. As such, CareSource challenges the Debtors' ability to transfer the policies to the trust. Because the Debtors' role in the litigation as it relates to the insurance policies is contested and remains unclear, the Court finds that dismissing them from the proceeding would be imprudent. Therefore, the Court will deny the Debtors' request for dismissal at this stage.

---

[7] To this point, the secured creditors are the Silver Point Defendants.

## V. CONCLUSION

For the foregoing reasons, the Court finds that CareSource has satisfied its burden, and

the Court will deny the Defendants' Motion to Dismiss in all respects.

Dated:  Wilmington, Delaware
        December 1, 2017

                                    Brendan Linehan Shannon
                                    Chief United States Bankruptcy Judge